UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| JORGE F. MARTINEZ, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 18-cv-11449-ADB |
| | * | |
| WARREN SPAULDING, | * | |
| | * | |
| Respondent. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court are Petitioner Jorge F. Martinez's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and related filings including a motion for discovery, [ECF No. 1 (petition), ECF No. 42 (memorandum in support), ECF No. 59 (reply in support), ECF No. 29 (motion for discovery), ECF No. 39 (memorandum in support of discovery), ECF No. 60 (additional memorandum in support of discovery)], and Respondent Warren Spaulding's ("Respondent") opposition and motion to dismiss the petition, [ECF No. 54]. Petitioner asks that: (1) he be resentenced based on newly discovered evidence that was allegedly unlawfully withheld by the government in violation of Brady v. Maryland, 373 U.S. 83 (1963); (2) his Presentence Investigation Report ("PSR") be amended to strike references to a sexual assault for which he was not charged or convicted; (3) an order be issued directing the Bureau of Prisons ("BOP") to no longer treat him as a sex offender; and (4) the judgment be amended to strike all sex offender terms of his supervision. [ECF No. 42 at 21–22]. For the reasons set forth below, Respondent's motion to dismiss is GRANTED in part and DENIED in part, and the motion for discovery is DENIED as moot.

**I.    BACKGROUND**

    **A.    Factual Background**

        1.    <u>The Underlying Conviction and Sentencing</u>

In 2006, Petitioner lived in Florida and rented a house from a man named Jeffrey McCann who eventually became a confidential informant for the Tampa Police Department. <u>United States v. Martinez ("Martinez I")</u>, 317 F. App'x 929, 932 (11th Cir. 2009). In March 2006, McCann called a law enforcement hotline and told the police that he had seen Petitioner dealing drugs from the house and that Petitioner kept a shotgun at the house. <u>Id.</u> On or around May 26, 2006, McCann told the police that Petitioner was about to leave his house with drugs and a firearm. <u>Id.</u> The police pulled Petitioner's car over and found drugs, money, and a gun. <u>Id.</u> The police then executed a search warrant for Petitioner's house and recovered additional drugs and drug paraphernalia. <u>Id.</u> at 932–33.

While the investigation into the drug and firearm charges was ongoing, the police were also separately investigating allegations that Petitioner had sexually assaulted a woman ("C.S.") at his house. See <u>Martinez I</u>, 317 F. App'x at 933. C.S. told police that Petitioner had drugged her and then sexually assaulted and raped her while she was in a drugged state. [ECF No. 54-1 ¶¶ 19–20, 63]. All charges related to that sexual assault were eventually dropped. [<u>Id.</u> ¶ 63].

On March 16, 2007, a jury in the Middle District of Florida convicted Petitioner of (1) conspiracy to possess with intent to distribute MDMA, marijuana, and 500 grams or more of cocaine in violation of 21 U.S.C. § 846 (Count One); (2) possession with intent to distribute MDMA and cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Two); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); and (4) distribution of methamphetamine in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(C) (Count Four).  Verdict, United States v. Martinez, No. 06-cr-0466, ECF No. 64–65 (M.D. Fla. Mar. 16, 2007).

At the sentencing hearing on August 9, 2007, the government asked that the sentencing judge apply a vulnerable victim sentencing enhancement for the rape and sexual assault of C.S. when calculating the guideline sentencing range.  [ECF No. 54-4 at 21:22–22:20].  In support of the vulnerable victim enhancement, the government called C.S., who testified that Petitioner and another individual forced her to take drugs and then sexually assaulted her while she was under the influence of the drugs.  [Id. at 24:3–29:19].  During cross examination, defense counsel questioned C.S. about the sexual assault, including whether she had undergone an examination following the assault and if she knew the results of that examination.  [Id. at 49:1–8].  The government objected and represented to the sentencing judge that "the hospital didn't properly do the rape exam . . . so there was not [a] sufficient sample to do the DNA" and there were no results.[1]  [Id. at 49:10–50:10].  Petitioner's PSR also included details about the sexual assault.  [ECF No. 54-1 ¶¶ 18–21, 63].

---

[1] The exact exchange at the sentencing hearing was:

> Q And to your knowledge did law enforcement do a rape, uh, examination on you?
> THE WITNESS: They did.
> BY MR. CAMARENO [Petitioner's defense counsel]:
> Q Okay. To your knowledge have you ever been provided with the result of that?
> A No. I -- no.
> Q Any DNA that was taken, do you know of [sic]?
> MS. MURPHY-DAVIS [AUSA]: Your Honor, objection at this point.  Uh, we know what happened with the rape exam, and it's not relevant.  And if the Court wants to know, I can let the Court know that the hospital messed it up all up.
> MR. CAMARENO: I think -- I think that should be in the record, Judge.  In fact, I don't think I ever knew that.
> THE COURT: What is the inquiry?

After hearing the testimony and other evidence, the judge calculated Petitioner's base offense level as 32 for the drug counts. Martinez I, 317 F. App'x at 940. He also determined that the vulnerable victim enhancement, pursuant to U.S.S.G. § 3A1.1(b)(1), was applicable, which increased Petitioner's base offense level to 34. Id. Additionally, the judge found that Petitioner qualified as a career offender due to two prior predicate felony convictions, which resulted in an adjusted base offense level of 37. Id. This base offense level, with a criminal history category of VI, led to a recommended sentencing range of 360 months to life under the Sentencing Guidelines. Id. Petitioner was sentenced to concurrent 360-month terms for the three drug counts followed by a 60-month consecutive term for the firearm count, for a total of 420 months' imprisonment. Martinez v. United States ("Martinez II"), No. 06-cv-00466, 2011 WL 4502073, at *2 (M.D. Fla. Sept. 28, 2011). Petitioner was also ordered to participate in a sex offender treatment program as a condition of his supervised release, but he was not required to register as a sex offender. [ECF No. 54-7 at 2]; Judgment, United States v. Martinez, No. 06-cr-0466, ECF No. 85 at 4 (M.D. Fla. Aug. 15, 2007).

---

> MR. CAMARENO: The inquiry was if she had been subjected to a rape kit, and if she knew the results. My client never knew that -- I guess, that the hospital results -- something -- I guess if they had messed up --
> THE COURT: All right.
> MS. MURPHY-DAVIS: That was my understanding, Judge.
> THE COURT: You may -- you may give us the results, Ms. Murphy, if you have them.
> MS. MURPHY-DAVIS: Judge, it's my understanding, uh -- and I'll -- Mr. Porcelli can correct me if I'm wrong – is that the hospital didn't properly do the rape exam, uh, and so there was not sufficient sample to do the DNA.
> THE COURT: So you do not have any results?
> MS. MURPHY-DAVIS: No, Judge.

[ECF No. 54-4 at 49:1–50:9].

Petitioner filed a direct appeal to the Eleventh Circuit, arguing, among other issues, that the sentencing judge erred in applying the two-level offense enhancement for the sexual assault. Martinez I, 317 F. App'x at 940.  The Eleventh Circuit affirmed the conviction and declined to consider the vulnerable victim enhancement argument, reasoning that because Petitioner was sentenced as a career offender, any error in applying the vulnerable victim enhancement was harmless.  Id. at 941–42.  Petitioner filed a petition for a writ of certiorari with the Supreme Court, which was denied on October 5, 2009.  Martinez v. United States ("Martinez III"), 558 U.S. 882 (2009).

### 2. Florida Law Enforcement Records Request

On or around July 1, 2016, in response to his records request, Petitioner received documents from the Florida Department of Law Enforcement ("FDLE") and the Sarasota Police Department.  [ECF No. 1 at 11].  Petitioner argues that these records prove that he did not sexually assault and/or rape C.S.  [Id. at 13].  These documents include, among other things, a police report, [ECF No. 1-1 at 6–7], a report by a victim advocate that describes an interview with C.S. after the sexual assault as well as the administration of a rape examination by hospital staff, [id. at 8–9], and the results of a sexual assault examination, [id. at 14].  Those results state that "[s]emen was not identified" on samples taken during the examination.  [Id.].  The FDLE also represented to Petitioner that "[a]dditional records have been located" and that "[t]here are at least 1,000 pages of records" that were not being given to Petitioner.  [Id. at 12].

### 3. Post-Conviction Challenges

Since his conviction, sentencing, and direct appeal, Petitioner has filed numerous collateral attacks on his sentence in multiple courts.

On August 4, 2010, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in the Middle District of Florida, claiming ineffective assistance of counsel. Mot. to Vacate, Martinez v. United States, No. 10-cv-1735, ECF No. 1 (M.D. Fla. Aug. 4, 2010); Martinez II, 2011 WL 4502073, at *2. The motion was denied. Martinez II, 2011 WL 4502073, at *14. Three years later, in September 2013, Martinez filed a letter with the district court requesting that the sentencing judge correct his PSR to delete references to the sexual assault, which would result in the sex offender notifications being removed from his BOP file. [ECF No. 54-6]. The judge denied Petitioner's request, explaining that Petitioner could not show that his PSR was incorrect because the court had found that the government had "established the facts related to the sexual offense by a preponderance of the evidence." [ECF No. 54-7 at 2, 4].

On June 30, 2016, Petitioner filed an application with the Eleventh Circuit for leave to file a second or successive motion to vacate under 28 U.S.C. 2255(h). Application, In re Jorge Martinez, No. 16-14500 (11th Cir. June 30, 2016). This time Petitioner challenged his conviction based on the Supreme Court's holding in Johnson v. United States, 576 U.S. 591 (2015). Order, In re Jorge Martinez, No. 16-14500 (11th Cir. July 15, 2016). The Eleventh Circuit denied the application stating that "Johnson does not appear to affect or invalidate the definition of drug trafficking crime used in § 924(c)(2)," which is the provision of the statute under which Martinez was convicted. Id.

On July 28, 2016, Petitioner filed another application with the Eleventh Circuit for permission to file a second or successive § 2255 motion. [ECF No. 54-8]. His application relied on 28 U.S.C. § 2255(h)(1), which allows for a second or successive motion if it contains "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have

found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1).  Petitioner's application argued that he had identified newly discovered DNA evidence that proved he was innocent of the sexual assault that formed the basis of the vulnerable victim enhancement.  [ECF No. 54-8 at 5]. Petitioner's application did not allege that the DNA evidence was unlawfully withheld in violation of Brady.  See [ECF No. 54-8].  The Eleventh Circuit denied the request because he claimed only that he was innocent of the conduct underlying the sentencing enhancement and not that he was actually innocent of the *offenses* for which he was convicted.  [ECF No. 54-9 at 2]. The Eleventh Circuit further noted that "[e]ven so, [Petitioner] was sentenced as a career offender, so the vulnerable victim enhancement did not affect his total sentencing range."  Id.

On March 23, 2017, Petitioner, while housed at Federal Medical Center Devens in Ayer, Massachusetts, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Massachusetts that challenged his sex offender designation and custody classification within the BOP.  See Order, Martinez v. Grondolsky, No. 17-cv-10498, ECF No. 36 (D. Mass. Nov. 16, 2017).  That petition was dismissed for failure to exhaust administrative remedies.  Id.

On June 26, 2017, Petitioner filed a second petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Massachusetts challenging his career offender status.  See Petition, Martinez v. Grondolsky, No. 17-cv-11216, ECF No. 1 (D. Mass. June 26, 2017).  The petition was dismissed because it did not properly invoke the savings clause under 28 U.S.C. § 2255(e) and the district court lacked jurisdiction over his petition.  Order, Martinez v. Grondolsky, No. 17-cv-11216, ECF No. 14 at 3–6 (D. Mass. Jan. 9, 2018).

On January 4, 2019, Petitioner filed another petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Massachusetts which challenged the preponderance of the evidence drug quantity findings used to calculate his statutory mandatory minimum.  Petition,

Martinez v. Spaulding, No. 19-cv-10022, ECF No. 1 (D. Mass. Jan. 4, 2019).  The petition was again dismissed because Petitioner did not properly invoke the savings clause under 28 U.S.C. § 2255(e), and, regardless, there was no error in his sentencing calculation.  Order, Martinez v. Spaulding, No. 19-cv-10022, ECF No. 20 (D. Mass. Nov. 21, 2019).  The First Circuit summarily affirmed the district court's dismissal.  Martinez v. Spaulding, No. 19-cv-10022, ECF No. 25 (D. Mass. Mar. 31, 2021).

### B. Procedural History

On July 11, 2018, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  [ECF No. 1].  On February 22, 2019, Respondent filed his opposition to the petition and moved to dismiss the petition.  [ECF No. 20].  Petitioner filed a reply on March 4, 2019.  [ECF No. 23].  On June 27, 2019, the Court appointed counsel for Petitioner, [ECF No. 27], and, on December 20, 2019, the Court set a new briefing schedule allowing Petitioner, through counsel, to file a memorandum in support of his petition.  [ECF No. 36].  Petitioner filed a memorandum in support of his petition on March 30, 2020.  [ECF No. 42]. Respondent moved to dismiss the petition for lack of jurisdiction on November 12, 2020, [ECF No. 54], which Petitioner opposed.  [ECF No. 59].

Petitioner has also filed a motion for additional discovery, in which he asks the Court to allow him to (1) depose C.S.; (2) undertake an *in camera* review of the government's files and emails in Petitioner's underlying criminal case; and (3) issue subpoenas for "further laboratory evidence" from the Tampa Police Department and the FDLE.  [ECF Nos. 29, 39, 60].

## II.     DISCUSSION

### A.     § 2255(e)'s Savings Clause

Respondent argues that this Court does not have jurisdiction over Petitioner's § 2241 petition because it is a collateral attack on the validity of his sentence that must be brought in a motion pursuant to 28 U.S.C. § 2255. [ECF No. 54 at 12–17]. "Generally, motions to contest the legality of a sentence must be filed under [28 U.S.C.] § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodian court." Gonzalez v. United States, 150 F. Supp. 2d 236, 240 (D. Mass. 2001) (internal quotation marks omitted). "In rare instances, however, pursuant to the 'savings clause' of section 2255, a federal prisoner can challenge his conviction and sentence under section 2241 if the prisoner can establish that the remedy afforded under section 2255 is 'inadequate or ineffective to test the legality of his detention.'" Calvache v. Benov, 183 F. Supp. 2d 124, 126 (D. Mass. 2001) (quoting 28 U.S.C. § 2255 and citing United States v. Barrett, 178 F.3d 34, 49–50 (1st Cir. 1999)).[2] "[C]ourts have allowed recourse to the savings clause in rare and exceptional circumstances, such as those in which strict adherence to [the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA")] gatekeeping provisions would result in a 'complete miscarriage of justice.'" Trenkler v. United States, 536

---

[2] Section 2255(e)'s savings clause provides that:

> [a]n application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is *inadequate or ineffective to test the legality of his detention*.

28 U.S.C. § 2255(e) (emphasis added).

F.3d 85, 99 (1st Cir. 2008) (quoting In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997)). "Accordingly, post-conviction relief can be termed 'inadequate' or 'ineffective' only when, in a particular case, the configuration of section 2255 is such 'as to deny a convicted defendant any opportunity for judicial rectification.'" Id. (quoting In re Davenport, 147 F.3d 605, 611 (7th Cir. 1998).

"A petition under § 2255 cannot become inadequate or ineffective, thus permitting the use of § 2241, merely because a petitioner cannot meet the AEDPA['s] second or successive requirements. Such a result would make Congress's AEDPA amendment of § 2255 a meaningless gesture." Barrett, 178 F.3d at 50 (internal quotation marks omitted). Under 28 U.S.C. § 2255(h), a petitioner can bring a second or successive petition challenging the legality of his sentence in two narrow circumstances. First, under § 2225(h)(1), the petition must contain "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2225(h)(1). Second, under § 2255(h)(2), the petition must identify, "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id. § 2225(h)(2).

"[T]he First Circuit has yet to 'articulate[ ] the full scope of circumstances under which the saving[s] clause could apply.'" Henderson v. Grondolsky, 370 F. Supp. 3d 186, 194 (D. Mass. 2019) (quoting United States v. Almenas, 52 F.Supp.3d 341, 345 (D. Mass. 2014)). To date, the First Circuit has condoned the use of the savings clause in situations where a petitioner claims that he is actually innocent of the crime for which he was "indicted, convicted and sentenced," Trenkler, 536 F.3d at 99, and "when the Supreme Court has reversed the holdings of

10

the circuit courts regarding the meaning of a statute, and the petitioner is no longer guilty of a crime under the Supreme Court's new interpretation." Bostic v. Spaulding, 483 F. Supp. 3d 19, 23 (D. Mass. 2020) (citing Sustache-Rivera v. United States, 221 F.3d 8, 16 (1st Cir. 2000)).  Of particular relevance here, the First Circuit has not considered whether the savings clause is available when a petitioner argues he is innocent of the conduct underlying a *sentencing enhancement* rather than the *offense of conviction*.

Other Courts of Appeals have concluded that the savings clause does allow petitioners to raise claims of actual innocence concerning conduct that enhances their sentence rather than the underlying conviction.  E.g., United States v. Wheeler, 886 F.3d 415, 427–28 (4th Cir. 2018); Hill v. Masters, 836 F.3d 591, 599–600 (6th Cir. 2016); Brown v. Caraway, 719 F.3d 583, 588 (7th Cir. 2013).  These courts have found support for this reading in the text of the savings clause, which explicitly refers to the ability of a petitioner to test the legality of his "detention," rather than just his conviction.  Wheeler, 886 F.3d at 427–28 ("The savings clause pertains to one's 'detention,' and Congress deliberately did not use the word 'conviction' or 'offense,' as it did elsewhere in § 2255."); Brown, 719 F.3d at 588 ("The text of the clause focuses on the legality of the prisoner's detention . . . it does not limit its scope to testing the legality of the underlying criminal conviction.").[3]

---

[3] Petitioner relies heavily on the Supreme Court's order in Persaud v. United States, 571 U.S. 1172 (2014) in support of his argument that this Court has jurisdiction because "the savings clause provides a broad remedy to attack both the petitioner's conviction and his sentence." [ECF No. 42 at 32].  Petitioner's reliance is misplaced because Persaud was an order that ultimately remanded a matter to the Fourth Circuit for reconsideration based on the position of the Solicitor General and it was not a substantive decision of the Supreme Court.  See Day v. Hazlewood, No. 16-cv-00482, 2018 WL 1189342, at *3 (D.N.H. Feb. 15, 2018) (explaining that Persaud is "not a substantive decision and, therefore, does not support [petitioner's] contention that 'the particular sentencing errors he complains of are amenable to § 2241 relief in this case'" (quoting Robinson v. United States, 812 F.3d 476, 477 (5th Cir. 2016)), R. & R. adopted, 2018 WL 1187405 (D.N.H. Mar. 6, 2018).

The case most analogous to Petitioner's is Webster v. Daniels, 784 F.3d 1123 (7th Cir. 2015).[4] In Webster, the petitioner was convicted of a kidnapping that resulted in a death, and was himself sentenced to death. Id. at 1124. During the trial, defense counsel sent a request to the Social Security Administration ("SSA") seeking documents relating to petitioner's cognitive ability, but the SSA produced nothing. Id. at 1132–33. After appealing the conviction, Webster filed a § 2255 motion, which the district court denied. Id. at 1132. Thirteen years after his conviction and four years after the denial of his first § 2555 motion, Webster's new counsel uncovered records from the SSA that showed that he had been diagnosed as intellectually disabled a year before he committed the crime, and therefore was ineligible for the death penalty under Supreme Court precedent. Id. Following the discovery of these records, counsel filed an application for a successive § 2255 motion with the Fifth Circuit, but that court denied the application because § 2255(h)(1) requires evidence that petitioner was innocent of the offense, not just ineligible for the death penalty. Id. at 1132–35.

After relief was denied by the Fifth Circuit, Webster filed a § 2241 petition, invoking the savings clause, in the Southern District of Indiana, his district of his confinement. Webster, 784 F.3d at 1135. The district court denied the petition and Webster appealed to the Seventh Circuit. In an en banc opinion, the Seventh Circuit held that the petitioner could resort to the savings clause to bring his § 2241 petition based on newly discovered evidence. Id. at 1139. Central to

---

[4] Although other circuits allow petitioners to use the savings clause to present claims that they are actually innocent of the conduct underlying a sentencing enhancement, rather than the crime of conviction, many of those cases address the narrow instances where there has been an intervening change in substantive law that renders conduct noncriminal. Wheeler, 886 F.3d at 429; Hill, 836 F.3d at 594-95. Those circumstances are not present here, and these cases do not aid this Court's analysis. The parties have not identified any other court of appeals, beyond the Seventh Circuit, that has explicitly addressed circumstances where a petitioner alleges that he is innocent of the conduct underlying a sentencing enhancement due to newly discovered evidence.

the Seventh Circuit's holding was that the petitioner would be subject to a punishment forbidden by the Constitution if he were barred from relying on the savings clause, and "a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence." Id. at 1139.  The Seventh Circuit noted that its holding in Webster would not lead to a flood of new § 2241 petitions arguing that new evidence showed petitioners were not guilty of a sentencing enhancement because "the evidence must show that the petitioner is constitutionally ineligible for the penalty he received" and that "[b]ecause the Supreme Court has declared only two types of persons (minors and the intellectually disabled) categorically ineligible for a particular type of punishment, [the] ruling is as a matter of law limited to that set of people." Id. at 1140 n.9.[5]

### B.     Application to Petitioner's Case

Petitioner does not allege that he is actually innocent of the offenses of which he was convicted.  Instead, he argues that the evidence he has acquired through a records request, which was withheld from him during trial in violation of Brady, shows that he is innocent of the sexual assault that led the sentencing court to apply the vulnerable victim enhancement.  According to Petitioner, any resort to § 2255 is inadequate or ineffective because his newly discovered evidence does not make him innocent of the crime of conviction, so he is barred from relief under § 2255(h) and therefore, a fundamental miscarriage of justice would result if he were not permitted to raise his claim pursuant to the savings clause.  [ECF No. 42 at 2, 26].

Petitioner notes that he did raise his newly discovered evidence claim with the Eleventh Circuit in his request for a second or successive petition under § 2255(h)(1), but it was denied

---

[5] In a later opinion, the Seventh Circuit declined to put any limits on the savings clause beyond stating "that there must be a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." Purkey v. United States, 964 F.3d 603, 615 (7th Cir. 2020).

because he was not alleging actual innocence as to the offense of conviction. [ECF No. 42 at 27]. Yet, as Petitioner correctly recognizes, the mere fact that "a petitioner cannot meet the AEDPA['s] 'second or successive' requirements" does not make § 2255 inadequate or ineffective, because "[s]uch a result would make Congress's AEDPA amendment of § 2255 a meaningless gesture." Barrett, 178 F.3d at 50.

Petitioner urges this Court to adopt the reasoning of other circuits that permit access to the savings clause when a petitioner presents new evidence demonstrating actual innocence of the conduct underlying a sentencing enhancement. [ECF No. 42 at 32–40]. Even if the First Circuit allowed the use of the savings clause to challenge sentencing enhancements rather than the underlying offense, the circumstances of this case do not demonstrate that access to the savings clause is necessary to prevent a complete miscarriage of justice. See Trenkler, 536 F.3d at 99 ("[C]ourts have allowed recourse to the savings clause" only "in rare and exceptional circumstances," such as where the restrictions on section 2255 petitions "would result in a 'complete miscarriage of justice.'").

There is no dispute that Petitioner was sentenced as a career offender, with a total offense level of 37 and criminal history category VI, which led to a guideline sentencing range of 360 months to life. See Minutes, United States v. Martinez, No. 06-cr-0466, ECF No. 84 (M.D. Fla. Aug. 9, 2007). Because the 360-month sentence imposed for Counts 1, 2, and 4, "falls squarely within the guideline range" for a career offender, it does not reflect a miscarriage of justice. See McKubbin v. Grondolsky, 7 F. Supp. 3d 125, 133 (D. Mass. 2014) (citing Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994)). Petitioner speculates that the sentencing court would never have imposed such a lengthy sentence without the testimony of the sexual assault and rape, but the record does not support this view. [ECF No. 59 at 14 (Petitioner arguing that "the

14

government illegally suppressed Brady material and lied to the sentencing court to get that court to impose what was otherwise an unconscionable 420-month Guideline sentence in the absence of the false rape evidence.")]. The sentencing judge found that Petitioner qualified as a career offender, and the Eleventh Circuit held that any vulnerable victim enhancement would be harmless error precisely because the sentence was within the advisory guideline range for a career offender. And, unlike in Webster (assuming that analysis would apply here), Petitioner does not argue that he is categorically ineligible for the punishment imposed.

Petitioner's briefing focuses on the length of his term of imprisonment imposed, but his petition also requests (1) an amendment of his PSR to strike references to a sexual assault for which he was not charged or convicted; and (2) an amendment of the judgment to strike the sex offender provisions of his supervised release. [ECF No. 42 at 21–22].[6] Petitioner does not explain how, and the Court does not find that, the inclusion of the sexual assault in his PSR and the sex offender conditions of his supervised release are fundamental errors in his sentence such that resort to the savings clause is necessary to avoid a complete miscarriage of justice.

The Court certainly does not condone any misconduct on the part of the government, including misrepresenting facts, intentionally or not, to the sentencing court or failing to disclose potentially exculpatory information to the defense as is required under Brady. The facts of this case, however, demonstrate that Petitioner, a career offender, was sentenced to a term of years

---

[6] Although Petitioner labels these requests as challenges to his "conditions of confinement" properly raised in a § 2241 petition, "the Court must look to the substance of the motion to determine whether it is governed by the statutory framework set out in 28 U.S.C. § 2255." Hernandez-Albino v. Haynes, 368 F. App'x 156, 2010 WL 850191, at *1 (1st Cir. 2010) (per curiam). These two requests do not challenge the manner, execution, or conditions of his sentence. Instead, they challenge the validity of his sentence.

15

within the advisory guidelines range for a career offender. Accordingly, it does not present the "rare and exceptional circumstances" that allow for recourse to the savings clause.

Therefore, because this Court lacks jurisdiction to consider Petitioner's resentencing request under the savings clause, Respondent's motion to dismiss for lack of jurisdiction over Petitioner's challenges to the validity of his sentence is GRANTED.

### C. Motion for Additional Discovery

Petitioner appears to seek additional discovery to support his arguments that he is innocent of any sexual assault or rape conduct and therefore entitled to an amended PSR, an amended judgment, and resentencing due to the government's misconduct and failure to produce exculpatory evidence. [ECF No. 29, 39, 60]. Because this Court does not have jurisdiction to hear Petitioner's challenge to the validity of his sentence, the motion for discovery is DENIED as moot.

### D. Conditions of Confinement

Petitioner also seeks an order directing the BOP to no longer treat him as a sex offender.[7] [ECF No. 42 at 21]. Unlike a challenge to the validity of a sentence, challenges to "the manner, location, or conditions of a sentence's execution" may be brought pursuant to a § 2241 petition in this Court. Gonzalez, 150 F. Supp. 2d at 240. Courts in this district have analyzed challenges to the BOP's classifications in the context of § 2241 petitions. See Isler v. Grondolsky, 942 F. Supp. 2d 170 (D. Mass. 2013). For this reason, the Court has jurisdiction over this claim, and Respondent's motion to dismiss it is DENIED.

---

[7] As noted above, Petitioner's requests for (1) an amendment of his PSR to strike references to a sexual assault for which he was not charged or convicted; and (2) an amendment of the judgment to strike all sex offender terms of his supervision, [ECF No. 42 at 21–22], are attacks on the validity of his sentence rather than its execution.

16

## III. CONCLUSION

Accordingly, for the reasons set forth above, Respondent's motion to dismiss, [ECF No. 54], is <u>DENIED</u> in part and <u>GRANTED</u> in part. The petition is <u>DISMISSED</u> to the extent it seeks (1) resentencing on Counts 1, 2 and 4; (2) an amendment to the PSR to strike all references to the sexual assault; and (3) an amendment of the judgment to strike all sex offender terms of his supervision. The motion for discovery, [ECF Nos. 29, 39, 60], is <u>DENIED</u> as moot.

Within sixty (60) days of the entry of this Order, Respondent shall file a response to Petitioner's request seeking an order directing the BOP to no longer treat him as a sex offender.

**SO ORDERED.**

September 8, 2021 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE