UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JORGE F. MARTINEZ, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. 18-cv-11449-ADB |
| WARDEN SPAULDING, | * | |
| Respondent. | * | |

# MEMORANDUM AND ORDER

BURROUGHS, D.J.

Before the Court is Petitioner Jorge F. Martinez's ("Petitioner") motion for reconsideration of the Court's September 8, 2021 Order granting in part and denying in part Respondent Warren Spaulding's ("Respondent") motion to dismiss for lack of jurisdiction. Respondent has also moved to dismiss Petitioner's sole remaining claim. For the reasons set forth below, Petitioner's motion, [ECF No. 81], is <u>DENIED</u> and Respondent's motion, [ECF No. 74], is <u>GRANTED</u>.

I. **BACKGROUND**

　　A. **Factual Background**

The Court assumes familiarity with the facts from its prior order, <u>Martinez v. Spaulding</u>, No. 18-cv-11449, 2021 WL 4080051 (D. Mass. Sept. 8, 2021), but nevertheless reproduces them below for ease of reference:

　　　　1. <u>The Underlying Conviction and Sentencing</u>

In 2006, Petitioner lived in Florida and rented a house from a man named Jeffrey McCann who eventually became a confidential informant for the Tampa Police Department. <u>United States v. Martinez</u> ("<u>Martinez I</u>"), 317 F. App'x 929, 932

(11th Cir. 2009). In March 2006, McCann called a law enforcement hotline and told the police that he had seen Petitioner dealing drugs from the house and that Petitioner kept a shotgun at the house. Id. On or around May 26, 2006, McCann told the police that Petitioner was about to leave his house with drugs and a firearm. Id. The police pulled Petitioner's car over and found drugs, money, and a gun. Id. The police then executed a search warrant for Petitioner's house and recovered additional drugs and drug paraphernalia. Id. at 932–33.

While the investigation into the drug and firearm charges was ongoing, the police were also separately investigating allegations that Petitioner had sexually assaulted a woman ("C.S.") at his house. See Martinez I, 317 F. App'x at 933. C.S. told police that Petitioner had drugged her and then sexually assaulted and raped her while she was in a drugged state. [ECF No. 54-1 ¶¶ 19–20, 63]. All charges related to that sexual assault were eventually dropped. [Id. ¶ 63].

On March 16, 2007, a jury in the Middle District of Florida convicted Petitioner of (1) conspiracy to possess with intent to distribute MDMA, marijuana, and 500 grams or more of cocaine in violation of 21 U.S.C. § 846 (Count One); (2) possession with intent to distribute MDMA and cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Two); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); and (4) distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Four). Verdict, United States v. Martinez, No. 06-cr-0466, ECF Nos. 64–65 (M.D. Fla. Mar. 16, 2007).

At the sentencing hearing on August 9, 2007, the government asked that the sentencing judge apply a vulnerable victim sentencing enhancement for the rape and sexual assault of C.S. when calculating the guideline sentencing range. [ECF No. 54-4 at 21:22–22:20]. In support of the vulnerable victim enhancement, the government called C.S., who testified that Petitioner and another individual forced her to take drugs and then sexually assaulted her while she was under the influence of the drugs. [Id. at 24:3–29:19]. During cross examination, defense counsel questioned C.S. about the sexual assault, including whether she had undergone an examination following the assault and if she knew the results of that examination. [Id. at 49:1–8]. The government objected and represented to the sentencing judge that "the hospital didn't properly do the rape exam . . . so there was not [a] sufficient sample to do the DNA" and there were no results.[1] [Id. at

---

[1] The exact exchange at the sentencing hearing was:

> Q And to your knowledge did law enforcement do a rape, uh, examination on you?
> THE WITNESS: They did.
> BY MR. CAMARENO [Petitioner's defense counsel]:
> Q Okay. To your knowledge have you ever been provided with the result of that?

2

49:10–50:10]. Petitioner's pre-sentence report ("PSR") also included details about the sexual assault. [ECF No. 54-1 ¶¶ 18–21, 63].

After hearing the testimony and other evidence, the judge calculated Petitioner's base offense level as 32 for the drug counts. Martinez I, 317 F. App'x at 940. He also determined that the vulnerable victim enhancement, pursuant to U.S.S.G. § 3A1.1(b)(1), was applicable, which increased Petitioner's base offense level to 34. Id. Additionally, the judge found that Petitioner qualified as a career offender due to two prior predicate felony convictions, which resulted in an adjusted base offense level of 37. Id. This base offense level, with a criminal history category of VI, led to a recommended sentencing range of 360 months to life under the Sentencing Guidelines. Id. Petitioner was sentenced to concurrent 360-month terms for the three drug counts followed by a 60-month consecutive term for the firearm count, for a total of 420 months' imprisonment. Martinez v. United States ("Martinez II"), No. 06-cv-00466, 2011 WL 4502073, at *2 (M.D. Fla. Sept. 28, 2011). Petitioner was also ordered to participate in a sex offender treatment program as a condition of his supervised release, but he was not required to register as a sex offender. [ECF No. 54-7 at 2]; Judgment, United States v. Martinez, No. 06-cr-0466, ECF No. 85 at 4 (M.D. Fla. Aug. 15, 2007).

Petitioner filed a direct appeal to the Eleventh Circuit, arguing, among other issues, that the sentencing judge erred in applying the two-level offense enhancement for the sexual assault. Martinez I, 317 F. App'x at 940. The

---

A No. I -- no.
Q Any DNA that was taken, do you know of [sic]?
MS. MURPHY-DAVIS [AUSA]: Your Honor, objection at this point. Uh, we know what happened with the rape exam, and it's not relevant. And if the Court wants to know, I can let the Court know that the hospital messed it up all up.
MR. CAMARENO: I think -- I think that should be in the record, Judge. In fact, I don't think I ever knew that.
THE COURT: What is the inquiry?
MR. CAMARENO: The inquiry was if she had been subjected to a rape kit, and if she knew the results. My client never knew that -- I guess, that the hospital results -- something -- I guess if they had messed up --
THE COURT: All right.
MS. MURPHY-DAVIS: That was my understanding, Judge.
THE COURT: You may -- you may give us the results, Ms. Murphy, if you have them.
MS. MURPHY-DAVIS: Judge, it's my understanding, uh -- and I'll -- Mr. Porcelli can correct me if I'm wrong – is that the hospital didn't properly do the rape exam, uh, and so there was not sufficient sample to do the DNA.
THE COURT: So you do not have any results?
MS. MURPHY-DAVIS: No, Judge.

[ECF No. 54-4 at 49:1–50:9].

Eleventh Circuit affirmed the conviction and declined to consider the vulnerable victim enhancement argument, reasoning that because Petitioner was sentenced as a career offender, any error in applying the vulnerable victim enhancement was harmless. Id. at 941–42. Petitioner filed a petition for a writ of certiorari with the Supreme Court, which was denied on October 5, 2009. Martinez v. United States ("Martinez III"), 558 U.S. 882 (2009).

    2.        Florida Law Enforcement Records Request

On or around July 1, 2016, in response to his records request, Petitioner received documents from the Florida Department of Law Enforcement ("FDLE") and the Sarasota Police Department. [ECF No. 1 at 11]. Petitioner argues that these records prove that he did not sexually assault and/or rape C.S. [Id. at 13]. These documents include, among other things, a police report, [ECF No. 1-1 at 6–7], a report by a victim advocate that describes an interview with C.S. after the sexual assault as well as the administration of a rape examination by hospital staff, [id. at 8–9], and the results of a sexual assault examination, [id. at 14]. Those results state that "[s]emen was not identified" on samples taken during the examination. [Id.]. The FDLE also represented to Petitioner that "[a]dditional records have been located" and that "[t]here are at least 1,000 pages of records" that were not being given to Petitioner. [Id. at 12].

    3.        Post-Conviction Challenges

Since his conviction, sentencing, and direct appeal, Petitioner has filed numerous collateral attacks on his sentence in multiple courts.

On August 4, 2010, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in the Middle District of Florida, claiming ineffective assistance of counsel. Mot. to Vacate, Martinez v. United States, No. 10-cv-1735, ECF No. 1 (M.D. Fla. Aug. 4, 2010); Martinez II, 2011 WL 4502073, at *2. The motion was denied. Martinez II, 2011 WL 4502073, at *14. Three years later, in September 2013, Martinez filed a letter with the district court requesting that the sentencing judge correct his PSR to delete references to the sexual assault, which would result in the sex offender notifications being removed from his [Bureau of Prisons ("BOP")] file. [ECF No. 54-6]. The judge denied Petitioner's request, explaining that Petitioner could not show that his PSR was incorrect because the court had found that the government had "established the facts related to the sexual offense by a preponderance of the evidence." [ECF No. 54-7 at 2, 4].

On June 30, 2016, Petitioner filed an application with the Eleventh Circuit for leave to file a second or successive motion to vacate under 28 U.S.C. 2255(h). Application, In re Jorge Martinez, No. 16-14500 (11th Cir. June 30, 2016). This time Petitioner challenged his conviction based on the Supreme Court's holding in Johnson v. United States, 576 U.S. 591 (2015). Order, In re Jorge Martinez, No. 16-14500 (11th Cir. July 15, 2016). The Eleventh Circuit denied the

4

application stating that "Johnson does not appear to affect or invalidate the definition of drug trafficking crime used in § 924(c)(2)," which is the provision of the statute under which Martinez was convicted.  Id.

On July 28, 2016, Petitioner filed another application with the Eleventh Circuit for permission to file a second or successive § 2255 motion.  [ECF No. 54-8].  His application relied on 28 U.S.C. § 2255(h)(1), which allows for a second or successive motion if it contains "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."  28 U.S.C. § 2255(h)(1).  Petitioner's application argued that he had identified newly discovered DNA evidence that proved he was innocent of the sexual assault that formed the basis of the vulnerable victim enhancement.  [ECF No. 54-8 at 5].  Petitioner's application did not allege that the DNA evidence was unlawfully withheld in violation of Brady.  See [ECF No. 54-8].  The Eleventh Circuit denied the request because he claimed only that he was innocent of the conduct underlying the sentencing enhancement and not that he was actually innocent of the *offenses* for which he was convicted.  [ECF No. 54-9 at 2].  The Eleventh Circuit further noted that "[e]ven so, [Petitioner] was sentenced as a career offender, so the vulnerable victim enhancement did not affect his total sentencing range."  Id.

On March 23, 2017, Petitioner, while housed at Federal Medical Center Devens in Ayer, Massachusetts, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Massachusetts that challenged his sex offender designation and custody classification within the BOP.  See Order, Martinez v. Grondolsky, No. 17-cv-10498, ECF No. 36 (D. Mass. Nov. 16, 2017).  That petition was dismissed for failure to exhaust administrative remedies.  Id.

On June 26, 2017, Petitioner filed a second petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Massachusetts challenging his career offender status.  See Petition, Martinez v. Grondolsky, No. 17-cv-11216, ECF No. 1 (D. Mass. June 26, 2017).  The petition was dismissed because it did not properly invoke the savings clause under 28 U.S.C. § 2255(e) and the district court lacked jurisdiction over his petition.  Order, Martinez v. Grondolsky, No. 17-cv-11216, ECF No. 14 at 3–6 (D. Mass. Jan. 9, 2018).

On January 4, 2019, Petitioner filed another petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Massachusetts which challenged the preponderance of the evidence drug quantity findings used to calculate his statutory mandatory minimum.  Petition, Martinez v. Spaulding, No. 19-cv-10022, ECF No. 1 (D. Mass. Jan. 4, 2019).  The petition was again dismissed because Petitioner did not properly invoke the savings clause under 28 U.S.C. § 2255(e), and, regardless, there was no error in his sentencing calculation.  Order, Martinez v. Spaulding, No. 19-cv-10022, ECF No. 20 (D. Mass. Nov. 21,

2019). The First Circuit summarily affirmed the district court's dismissal. Martinez v. Spaulding, No. 19-cv-10022, ECF No. 25 (D. Mass. Mar. 31, 2021).

[ECF No. 67 at 2–8.]

### B.   Procedural History

On July 11, 2018, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [ECF No. 1]. Subsequently, the Court appointed counsel for Petitioner, [ECF No. 27], and set a briefing schedule to allow Petitioner, through counsel, to file a memorandum in support of his petition. [ECF No. 36]. Petitioner filed a memorandum in support of his petition on March 30, 2020, [ECF No. 42], and Respondent moved to dismiss the petition for lack of jurisdiction, [ECF No. 54], which Petitioner opposed, [ECF No. 59]. On September 8, 2021, this Court issued an order dismissing the petition to the extent it sought (1) resentencing on Counts 1, 2 and 4; (2) an amendment to the Presentence Investigation Report ("PSR") to strike all references to the sexual assault; and (3) an amendment of the judgment to strike all sex offender terms of his supervision.[2] [ECF No. 67 at 17]. However, the Court found that it had jurisdiction over Petitioner's request for an order directing the BOP to no longer treat him as a sex offender because it was a challenge to "the manner, location, or conditions of a sentence's execution" and could be brought pursuant to a 28 U.S.C. § 2241 petition, and therefore denied Respondent's motion to dismiss for lack of jurisdiction on that count. [ECF No. 67 at 16 (quoting Gonzalez v. United States, 150 F. Supp. 2d 236, 240 (D. Mass. 2001)].

Respondent then moved to dismiss Petitioner's sole surviving claim requesting that an order be issued directing the BOP to no longer treat him as a sex offender. [ECF No. 74]. Petitioner opposed the motion, [ECF No. 80], and also filed his motion for reconsideration, [ECF

---

[2] The order also denied Petitioner's related motion for discovery. [ECF No. 67 at 16].

6

No. 81]. Respondent has not filed an opposition to Petitioner's motion for reconsideration and both motions are now ripe for resolution.

## II. DISCUSSION

### A. Motion to Reconsider

As a threshold matter, Petitioner does not refer the Court to any statutory authority for its motion to reconsider, and the Court notes that the Federal Rules of Civil Procedure do not expressly provide for such motion. Nonetheless, the Court construes Petitioner's motion as brought under Fed. R. Civ. P. 54(b),[3] "which invokes a court's inherent power to provide relief from interlocutory decisions 'as justice requires.'" Monsarrat v. Zaiger, 303 F. Supp. 3d 164, 165–66 (D. Mass. 2018) (quoting Greene v. Union Mut. Life Ins. Co. of Am., 764 F.2d 19, 22–23 (1st Cir. 1985) (Breyer, J.)). "Generally, a court will not allow a motion to reconsider an interlocutory order unless a movant can demonstrate (1) an intervening change in the law, (2) the discovery of new evidence not previously available, or (3) a clear error of law in the first order." Id. at 166 (citation omitted).

Petitioner suggests that this Court made an error of law in determining that the circumstances of this case do not amount to a miscarriage of justice that would trigger § 2255's savings clause. [ECF No. 81 at 2–7]. In particular, he asserts that the Court (1) erred in finding that the sentence imposed was reasonable, (2) "may" have misinterpreted Webster v. Daniels, 784 F.3d 1123 (7th Cir. 2015), and (3) misunderstands Petitioner's reliance on Persaud v. United States, 571 U.S. 1172 (2014). [Id. at 2–11]. Because Petitioner's arguments take issue with the

---

[3] The rule provides, in relevant part, that "any order or other decision, however designated, that adjudicates fewer than all the claims ... of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b).

prior order's legal conclusions, the Court considers whether its decision was the result of clear error.

"Under the clear error standard, a trial court's decision will not be set aside so long as it is plausible in light of the record viewed in its entirety." Antony v. Duty Free Ams., Inc., 705 F. Supp. 2d 112, 114 (D. Mass. 2010) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573–74 (1985)) (internal quotations omitted). In other words, "if there are a couple of plausible ways to view the evidence, the judge's preference for one over the other cannot be clear error." In re O'Donnell, 728 F.3d 41, 45 (1st Cir. 2013) (citing Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 70 (1st Cir. 2012)).

In Petitioner's view, the sentence he received—albeit within the guideline range—represents a miscarriage of justice because the government allegedly presented "perjured testimony" and "hid[] strong evidence of [the perjured testimony's] falsehood[.]" [ECF No. 81 at 2]. Petitioner further faults the Court for allegedly "f[inding] that petitioner ha[d] made an initial showing of serious misconduct associated with a miscarriage of justice" but then "declin[ing] to exercise jurisdiction because the petitioner's sentence was within [the guideline sentence range], even though a Guidelines Sentence is not entitled to a presumption of reasonableness." [Id. at 3].

The savings clause's miscarriage of justice exception is narrow and reserved for "rare and exceptional circumstances." Trenkler v. United States, 536 F.3d 85, 99 (1st Cir. 2008). It applies only where "the conviction of an innocent person—would result from a failure to entertain the claim[,]" McCleskey v. Zant, 499 U.S. 467, 468 (1991); see also Dinkins v. Boncher, No. 21-cv-11847, 2022 WL 3021108, at *2 (D. Mass. July 29, 2022) (citation omitted), and courts in the First Circuit have consistently held that it does not apply where the petitioner

8

does not contend that the sentence is "beyond the statutory maximum for the offences he was convicted of[,]" see McKubbin v. Grondolsky, 7 F. Supp. 3d 125, 133 (D. Mass. 2014) (quoting Trenkler 536 F.3d at 99); see also Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994) (no miscarriage of justice where the petitioner was sentenced "within the range that would have been imposed even if the district court had not added three points to his criminal history score"). Moreover, "[t]o demonstrate 'extraordinary circumstances,' a petitioner must establish 'actual innocence,'" which requires "clear and convincing evidence . . . that no reasonable factfinder would have returned a guilty verdict." Dinkins, 2022 WL 3021108, at *2–3 (ellipsis in original) (quoting United States v. Barrett, 178 F.3d 34, 48, 57 (1st Cir. 1999) (citation omitted)).

Here, there is ample evidence in the record to support the Court's finding that Petitioner could not avail himself of § 2255's savings clause. As the Court observed, "Petitioner does not allege that he is actually innocent of the offenses of which he was convicted" and it is undisputed that Petitioner qualified, and was sentenced, as a career offender with respect to the drug related offenses. [ECF No. 67 at 13–14; ECF No. 42 at 6]; see also [ECF No. 42-2 at 28]. Thus, the sentence Petitioner received for the drug offenses—360 months' imprisonment as to Counts 1, 2, and 4 to run concurrently—was within the guideline range even if the vulnerable victim enhancement had not been applied. This, in the Court's view, contradicted Petitioner's speculation that the sentencing court would not have imposed the 360-month sentence but for the vulnerable victim enhancement. See [ECF No. 67 at 14–15].

More importantly, and further precluding recourse to § 2255's savings clause, Petitioner has not established actual innocence with respect to the sexual assault charge. Petitioner alleges that the "newly discovered evidence" he received as a result of his public records request to the Florida Department of Law Enforcement ("FDLE") shows that he "could not have been found to

have committed a sexual assault . . . ." [ECF No. 81 at 1]; see also [ECF No. 59 at 2]. That evidence shows, in part, that (1) "a rape test kit was administered correctly in a major hospital by emergency room nurses[,]" (2) swabs from C.S.'s body, which were collected during administration of the rape kit, tested negative for semen, although one tested positive for blood, (3) no semen or saliva was visible on C.S.'s body, (4) the examiner "did not see vaginal or anal tears", and (4) "[d]espite claiming that someone\had [sic] pierced her vulva during the purported sexual assault, the examination revealed 'two small not recent marks' and CS did not respond to questions on this subject." [ECF No. 42 at 11–14 (quoting ECF No. 1-1 at 7–8)]. Although this evidence certainly casts doubt on the allegations C.S. made during her testimony at Petitioner's sentencing hearing, the Court cannot conclude, based on the record before it, that the evidence is sufficient to establish, by clear and convincing evidence, that no reasonable factfinder would have found him guilty. Dinkins, 2022 WL 3021108, at *3 (citing Barrett, 178 F.3d at 57). That is due, in part, to the presence of contradictory information in the record. For example, although the laboratory identified no semen on C.S., [ECF No. 1-6 at 14], police reports indicate that there was some inflammation of her rectal area "due to her possibly being sodomized." Compare [ECF No. 1-1 at 7] with [id. at 8]. Additionally, the sentencing judge heard what amounted to nearly thirty pages of C.S.'s description of her sexual assault and credited it. [ECF No. 54-4 at 24:05–52:25]. In light of this conflicting evidence, the Court finds that Petitioner has not demonstrated his actual innocence and thus cannot avail himself of § 2255's savings clause.

Petitioner also purports to disagree with the Court's interpretation of Webster and Persaud, however, he neither asserts nor demonstrates that the Court clearly erred in applying either precedent. Rather, Petitioner states only that "[t]he Court's interpretation of Webster v. Daniels may not be accurate[,]" [ECF No. 81 at 7], and that he "believes that the court

10

misinterprets his reliance on Persaud or, if not, that counsel did not adequately state [P]etitioner's argument[,]" [id. at 10]. Neither argument is sufficient to meet the clear error standard. Antony, 705 F. Supp. 2d at 115 (citing Froudi v. United States, 22 Cl. Ct. 290, 300 (1991) ("[A] motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge . . . ."). First, Petitioner concedes that Persaud was not a substantive decision of the Supreme Court, and is non-binding, and does not argue that the Court erred in its application. [ECF No. 81 at 10]. Second, Petitioner does not allege that the Court misconstrued Webster but rather disagrees with the conclusion that Petitioner's case is distinguishable based on the Court's finding that Petitioner's sentence is not categorically unconstitutional and thus does not amount to a miscarriage of justice permitting recourse to the savings clause. See supra at 8–10. Accordingly, because Petitioner has not demonstrated that the Court clearly erred in its September 8, 2021 order, Petitioner's motion for reconsideration is DENIED.

      **B.**      **Motion to Dismiss**

Respondent has moved to dismiss Petitioner's sole remaining claim that seeks an order directing the BOP to declassify him as a sex offender. Respondent argues that Petitioner was assigned a Sex Offender Public Safety Factor ("PSF") based on the contents of his PSR and this designation was wholly within the BOP's discretion. [ECF No.74 at 1]. Petitioner asserts the BOP's decision to designate Petitioner with a Sex Offender PSF was arbitrary and capricious and thus a violation of the Administrative Procedures Act ("APA"). [ECF No. 80 at 2, 5–12].

"The Supreme Court has established a 'minimum intrusion' policy into the decisions of state prison administration that provides these official[s] with wide discretion in the operation of prison facilities." Fox v. Lappin, 409 F. Supp. 2d 79, 90 (D. Mass. 2006) (quoting McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990)). A district court may alter an agency's decision

11

only when it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." Commonwealth v. Sullivan, 803 F. Supp. 475, 478 (D. Mass 1992) (quoting 5 U.S.C. § 706(2)(A)); see also Isler v. Grondolsky, 942 F. Supp. 2d 170, 176 (D. Mass. 2013). Such a standard is narrow and highly deferential to an agency's decision. River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009) (citing Carcieri v. Kempthorne, 497 F.3d 15, 43 (1st Cir.2007). As such, the agency's actions are presumed to be valid unless the reviewing court finds that they lacked a rational basis for making their decision or that the decision was not based on considerations of relevant factors. Id.

Relevant here, the BOP assigns each prisoner a PSF based upon "relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." BOP Program Statement 5100.08 at Ch. 5, p. 7. Specifically, a sex offender designation may be given where an inmate "[e]ngag[es] in sexual contact with another person without obtaining permission to do so," or "any sexual contact with . . . a person physically or mentally incapable of granting consent . . . ." Id. at p. 8. Importantly, the BOP guidelines explicitly state that a "conviction is not required for application of [the Sex Offender] PSF if the Presentence Investigation Report (PSR), or other official documentation, clearly indicates that the inmate had exhibited relevant behavior in the past." Id.; see e.g., Isler, 942 F. Supp. 2d at 177 (BOP's use of information in PSR to apply the Sex Offender PSF was not an abuse of discretion even though there was new evidence allegedly exonerating the prisoner of the sexual assault that served as the factual basis for his designation); Grayson v. Fed. Bureau of Prisons, No. 11-cv-00002, 2011 WL 7154384 at *4 (N.D.W. Va. July 22, 2011) (BOP did not abuse its discretion in classifying defendant who was charged but not convicted of a sexual

offense as a sex offender because his PSR indicated that he was arrested after being found naked in bed with a minor); Green v. Bureau of Prisons, No. 00-cv-0819, 2002 WL 32619483 at *11 (D. Minn. Jan. 29, 2002) (BOP did not arbitrarily assign a sex offender designation to prisoner convicted of distributing cocaine because his PSR described a pending state charge that involved a sexual offense with a minor).[4]

      Here, BOP cannot be said to have acted arbitrarily, capriciously, or in such a way that they abused their discretion when assigning a Sex Offender PSF to Petitioner. Rather, in making its determination, the BOP reasonably relied on information in Petitioner's PSR that suggested that he engaged in sexual conduct with a person who could not give consent. [ECF 1-6 at 4]; see also Order, Martinez v. Grondolsky, No. 17-cv-10498, ECF No. 36 at *2 (D. Mass. Nov. 16, 2017). Further, in response to Petitioner's request that the BOP remove his Sex Offender PSF, the BOP explained that the designation was properly applied because the sentencing judge (1) resolved or overruled all of Petitioner's objections regarding inclusion of the alleged sexual offense in his PSR and (2) adopted the PSR, which included the sexual offense, as fact. [ECF 1-6 at 1, 4]. In light of the record, "[the] court cannot rule conclusively that the BOP's factual determination that [Petitioner's] conviction involved sexual assault conduct was so clearly erroneous as to be arbitrary and capricious." Isler, 942 F. Supp. 2d. at 176–77. Respondent's motion to dismiss Petitioner's habeas corpus petition is therefore must be GRANTED.

---

[4] Petitioner correctly notes that these cases all involved prisoners who were assigned a Sex Offender PSF by the BOP and had prior convictions for sex crimes, or whose convictions were at the very least sexual in nature. BOP's Program Statement, however, clearly indicates that a conviction is not required and that BOP administrators may rely on information in official documents, such as a PSR, that clearly indicates prohibited sexual conduct when making their classifications.

## III. CONCLUSION

Accordingly, for the foregoing reasons, Petitioner's motion for reconsideration, [ECF No. 81], is <u>DENIED</u>, Respondent's motion to dismiss, [ECF No. 74], is <u>GRANTED</u> and the Petition is <u>DENIED</u>.

"Although a certificate of appealability is not essential for a § 2241 Petition," <u>Henderson v. Grondolosky</u>, No. 16-12459-DJC, 2017 WL 4038392, at *4 (D. Mass. Sept. 12, 2017) (citation omitted), the Court nonetheless grants one here.

**SO ORDERED.**

September 30, 2022                              /s/ Allison D. Burroughs
                                                ALLISON D. BURROUGHS
                                                U.S. DISTRICT JUDGE